CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED
MAR 07 2008
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| PATTY L. FUNKHOUSER and<br>DICKIE L. FUNKHOUSER,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>PILGRIM'S PRIDE CORPORATION<br>GROUP BENEFITS PLAN, et al.,<br><br>　　　　Defendants. | Civil Action No. 5:07CV00069<br><br>**MEMORANDUM OPINION**<br><br>By: Hon. Glen E. Conrad<br>United States District Judge |

Patty L. Funkhouser and Dickie L. Funkhouser filed this action against Pilgrim's Pride Corporation Group Benefits Plan, Union Security Insurance Company ("Union"), and Pilgrim's Pride Corporation, claiming wrongful denial of dependent life and accidental death and dismemberment ("AD&D") insurance benefits, in violation of the Employee Retirement Income Security Act of 1979 ("ERISA"), 29 U.S.C. § 1001, et seq.[1] The case is presently before the court on the cross-motions for summary judgment filed by the plaintiffs and Union. For the reasons set forth below, the court will deny the plaintiffs' motion and grant Union's motion.

### Factual and Procedural Background

Patty and Dickie Funkhouser and their son, Jeremy Funkhouser, were all employed by Pilgrim's Pride Corporation ("Pilgrim's Pride") in July of 2004. Jeremy worked in the live haul

---

[1] During a motions hearing held on February 26, 2008, the plaintiffs moved to dismiss the dependent life insurance claims, leaving only the claim for wrongful denial of AD&D benefits. Because Patty Funkhouser was the sole beneficiary of the relevant AD&D policy, the plaintiffs moved to dismiss Dickie Funkhouser from the case. Additionally, the plaintiffs moved to dismiss their claims against Pilgrim's Pride Corporation Group Benefits Plan and Pilgrim's Pride Corporation. By separate order, the court will grant the plaintiffs' oral motions to dismiss.

department of the company's Broadway, Virginia complex, where he served as a chicken catcher. (US 296).[2] On July 11, 2004, Jeremy died in an ATV accident. (US 224).

In November of 2003, Jeremy applied for AD&D insurance under Policy No. 4,043,045, a group insurance policy issued to Pilgrim's Pride by Union ("the group policy"). (US 1-60, 300).[3] Jeremy named Mrs. Funkhouser as the sole beneficiary of his AD&D policy. (US 300).

The group policy contains several eligibility classes for which a non-retired employee may qualify, all of which require the employee to be employed "*full-time*" and "at *active work*." (US 18) (emphasis in original). The term "active work" is defined as "the expenditure of time and energy for the *policyholder* or an *associated company* at your usual place of business on a *full-time* basis." (US 14) (emphasis in original). In turn, "full-time" is defined as "working at least 30 hours per week, unless indicated otherwise in the policy." (US 14).

The group policy also specifies when an individual's AD&D coverage ends. According to the policy, "a covered person's insurance will end on the date . . . the person is no longer in an *eligible class* . . . [or] stops *active work*." (US 27). Unlike the group life insurance policy offered by Union, which automatically converts to an individual policy if a covered employee dies within thirty-one days after his group life insurance ends (US 32), the group AD&D policy cannot be converted to an individual policy under any circumstances. (US 47).

On Friday, July 9, 2004, two days before his death, Jeremy spoke with Tina Campbell, the administrative assistant in the live haul department, and advised her that he was quitting.

---

[2] The court's citation to "US" refers to the pagination used in the administrative record.

[3] The group policy also included term life insurance and dependent life insurance. (US 7).

2

(US 76). Ms. Campbell memorialized her conversation with Jeremy in a handwritten note. The note states as follows:

> On Friday 7/9/04, Jeremy Funkhouser came into my office, put his ID badge on my desk and said he was leaving. He sat in my office for a few minutes and was complaining about the schedule changing. His crew was already working and he said that he was not going to work and that he was going to quit. He then left the complex. He did not work his shift on Friday 7/9/04.

(US 76).

Jeremy died on July 11, 2004. On July 13, 2004, Pilgrim's Pride representatives discussed the events of July 9, 2004. It was noted that Jeremy resigned on July 9, 2004 "after being advised his work schedule would be changing." (US 79). Brandy Barb, human resources manager at the Broadway complex, provided the following summary of events in an email to other Pilgrim's Pride representatives:

> . . . As I stated in the conversation with Gerry, Ruben and Tom, the exact communication from this individual was a verbal slur with the general wording of "Forget this," but more colorful. He threw his badge on the desk and walked out. He did not work his shift, and he never returned to the complex. There was no written document or intent. This was accepted as a voluntary termination (walk-off), and the Live Haul Administrative Assistant contacted the Employment Coordinator and informed her of the need for a replacement. She then forwarded the badge to HR via inner-office mail with a note[] attached stating "walked off."

(US 77). On July 28, 2004, Ms. Barb signed a Personnel Status Change form, which listed Jeremy's termination date as July 9, 2004. (US 75). The letters "QWJ," meaning "quit, walked off job," were listed in the termination code section. (US 75).

3

On July 29, 2004, Patty Funkhouser submitted an AD&D claim statement to Union. (US 296). The employee information section, completed by a Pilgrim's Pride representative, indicated that Jeremy last worked on July 9, 2004, and that he "quit - walked off job." (US 296).

On October 27, 2004, Union denied Mrs. Funkhouser's claim for AD&D benefits on the basis that Jeremy resigned on July 9, 2004. Union explained that, unlike the group life insurance policy issued by Union, the group AD&D policy cannot be converted to an individual policy following an employee's separation from employment. (US 139-140). With its denial letter, Union provided a copy of the company's Group Claim Denial Review Procedure, which advises claimants of the administrative process and their right to supplement the record before Union. Specifically, the document notifies claimants that they have "the right to submit issues and comments in writing, along with additional documents, records, and other information relating to [their] claim[s]." (US 141). The following week, Union also denied the claims for dependent life insurance benefits that were filed by Mr. and Mrs. Funkhouser. (US 327).

On November 9, 2004, Mr. and Mrs. Funkhouser filed their first administrative appeal, in which they specifically sought review of the decision to deny their dependent life insurance claims. (US 324). The Funkhousers did not submit any documents or records to support their appeal.

In response to the appeal, Union further reviewed all of the insurance claims associated with Jeremy's death, and on December 7, 2004, Union affirmed its decision to deny the claims. (US 322, 399-407). Union again provided Mr. and Mrs. Funkhouser with a copy of the company's Group Claim Denial Review Procedure. (US 404-405).

4

On December 29, 2004, Mr. and Mrs. Funkhouser filed a second administrative appeal, in which they argued that Jeremy did not quit his job on July 9, 2004, and that Union should contact Jeremy's co-workers regarding the issue. (US 118-119). The Funkhousers stated that "several persons who were in a position to have knowledge of the events of July 9, 2004 have reported to [them] that Jeremy did not quit his job and that Pilgrim's Pride personnel have been advised of that fact." (US 118). However, Mr. and Mrs. Funkhouser did not identify any particular co-workers, or attach any documents or records to support their position on this issue.

On November 22, 2005, approximately eleven months after the second administrative appeal was filed, Mr. and Mrs. Funkhouser contacted Union requesting an update on the status of the appeal. (US 108). On February 28, 2006, a Union representative sent the Funkhousers a letter apologizing for the delay, and explaining that "the Technical Consultant who was working on the file is out of the office indefinitely." (US 106). The representative further advised the couple that the claims had been sent to the appeal committee for review, that the review would take place within ten business days, and that they would be notified immediately of the committee's decision. (US 106).

On March 9, 2006, a Union representative emailed Angie Turner, with Pilgrim's Pride, regarding Mrs. Funkhouser's claim for AD&D benefits. (US 86). The representative advised Turner that Union needed "additional documentation," and requested that she "send any and all documentation you might have regarding [Jeremy's] termination of employment." (US 86).

On March 15, 2006, Union affirmed its denial of the claims for dependent life insurance benefits. (US 81-82). Union reserved ruling on Mrs. Funkhouser's claim for AD&D benefits,

5

pending receipt of additional information regarding the termination of Jeremy's employment. (US 82).

On March 21, 2006, in response to the company's request for additional documentation from Pilgrim's Pride, Union received copies of the Personnel Status Change form completed by Brandy Barb on July 28, 2004 (US 75), the written note from Tina Campbell (US 76), and the email exchange between Ms. Barb and other Pilgrim's Pride representatives (US 77). Seven days later, Union issued its final decision denying Mrs. Funkhouser's claim for AD&D benefits. Union again found that Jeremy stopped active work on July 9, 2004, and that his AD&D coverage ended on that date. (US 69-72).

The plaintiffs filed this action on July 9, 2007. The court held a hearing on the parties' cross-motions for summary judgment on February 26, 2008. The parties' motions are now ripe for review.

## **STANDARD OF REVIEW**

When an ERISA plan grants the administrator or fiduciary discretionary authority to determine eligibility, or to construe the plan's terms, the court must review a denial of benefits for abuse of discretion. Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997). Under this deferential standard, the court will not disturb a fiduciary's decision to deny a claim for benefits if the decision is reasonable, even if the court would have come to a different conclusion independently. Evans v. Metro. Life Ins. Co., 358 F.3d 307, 311 (4th Cir. 2004). "Such a decision is reasonable if it is the result of a deliberate and principled reasoning process and is supported by substantial evidence." Id. Substantial evidence is "more than a mere scintilla of evidence, but only such evidence that a reasonable mind might accept as adequate to support a

conclusion." E. Associated Coal, LLC v. Wiles, 176 Fed. Appx. 354, 356 (4th Cir. 2006). When assessing the reasonableness of a plan fiduciary's decision, the court's review is limited to the administrative record, which includes the evidence before the fiduciary at the time of its challenged decision. See Elliott v. Sara Lee Corp., 190 F.3d 601, 608 (4th Cir. 1999).

In this case, it is undisputed that the group policy granted Union "the sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the policy." (US 49). Therefore, the court must review Union's decision to deny Mrs. Funkhouser's claim for AD&D benefits for an abuse of discretion. However, because Union has the discretionary authority to determine entitlement to benefits and is also the group policy's insurer, a conflict of interest exists and the abuse of discretion standard is modified. Evans, 358 F.3d at 311. Under the modified abuse of discretion standard, Union's conflict of interest "must be weighed as a factor in determining whether an abuse of discretion occurred." Id.

## DISCUSSION

As stated above, the relevant terms of the group policy issued by Union provide that an employee's AD&D coverage ends on the date that he "is no longer in an eligible class" or "stops active work." (US 27). It is Union's finding that Jeremy Funkhouser stopped active work on July 9, 2004, and thus, that his AD&D coverage ended on that date, that is at the heart of the dispute in this case. Having reviewed the record, the court concludes that Union's finding in this regard was the result of a deliberate, principled reasoning process, and that it was supported by substantial evidence. Accordingly, even applying the adjusted scale of deference applicable to

this case, the court agrees with Union that it did not abuse its discretion in denying Mrs. Funkhouser's claim for AD&D benefits.

First, it is apparent from the record that Union's final decision to deny the AD&D claim was the result of a deliberate, principled reasoning process. The final decision followed Union's receipt of additional documentation from Pilgrim's Pride regarding the termination of Jeremy's employment. The final decision also followed two appeals of the initial denial of benefits, during which Mrs. Funkhouser was given the opportunity to supplement the administrative record. Despite receiving this opportunity, Mrs. Funkhouser failed to provide any additional evidence to support her contention that Jeremy did not quit his job on July 9, 2004.

Mrs. Funkhouser now argues that Union should have obtained statements from Jeremy's co-workers and supervisors, as well as Jeremy's payroll stubs, which would have shown that Pilgrim's Pride deducted premium payments after Jeremy's death. However, Union was under no duty to secure specific forms of evidence in determining whether Jeremy stopped active work on July 9, 2004, see LeFebre v. Westinghouse Elec. Corp., 747 F.2d 197, 208 (4th Cir. 1984); Elliott v. Sara Lee Corp., 190 F.3d at 609, and the company's failure to obtain the evidence referenced by Mrs. Funkhouser did not render Union's review process inadequate. While the Funkhousers did claim, as part of their second administrative appeal, that "several persons" had advised them that Jeremy did not quit his job on July 9, 2004, the Funkhousers did not identify any of these individuals. (US 188). Consequently, the court is unable to conclude that Union acted unreasonably by not obtaining statements from Jeremy's unidentified co-workers, or by not attempting to contact any Pilgrim's Pride employee who may have had contact with Jeremy on

8

the date in question. Likewise, the court is unable to conclude that Union's review process was inadequate in light of the fact that Jeremy's payroll stubs were not made a part of the record. Even if insurance premiums were mistakenly paid after Jeremy's eligibility ended, this would not provide a basis for a claim for benefits. See White v. Provident Life & Accident Ins. Co., 114 F.3d 26, 29 (4th Cir. 1997) (rejecting plaintiff's argument that the insurer's mistaken acceptance of premiums constituted a waiver of its right to deny coverage, and holding that the "plain written terms of [the] ERISA plan" governed the plaintiff's right to benefits).

The court also concludes that Union's decision to deny the claim for AD&D benefits was supported by substantial evidence. The initial claim statement indicated that Jeremy last worked on July 9, 2004 and that he "quit - walked off job" (US 296), as did Jeremy's Personnel Status Change form (US 75). According to the handwritten note from Tina Campbell, Jeremy placed his identification badge on her desk on July 9, 2004, complained about the fact that his work schedule was changing, advised her that "he was not going to work" and that "he was going to quit," and then left the complex without working his shift. (US 76). Based on the wording of Ms. Campbell's note, Mrs. Funkhouser contends that Jeremy "was going to quit (i.e. in the future)." However, the plaintiff's contention is belied by the fact that Jeremy turned in his identification badge prior to leaving the complex. Union's finding that Jeremy quit his job on July 9, 2004 is also supported by the July 13, 2004 email from Brandy Barb. The email indicates that Jeremy "threw his badge on the desk and walked out," that he "did not work his shift, and he never returned to the complex," that Jeremy's actions were "accepted as a voluntary termination (walk-off)," and that "the Live Haul Administrative Assistant contacted the Employment Coordinator and informed her of the need for a replacement" and "then forwarded the badge to

9

HR." (US 77).[4] In light of the foregoing evidence and in the absence of any evidence to the contrary, it was not unreasonable for Union to find that Jeremy stopped active work on July 9, 2004, and thus, that his AD&D coverage ended on that date. Accordingly, the court concludes that Union's decision to deny Mrs. Funkhouser's claim for AD&D benefits was not an abuse of discretion.

In reaching this decision, the court is unpersuaded by Mrs. Funkhouser's argument that Union acted improperly by taking more than the 120 days that the ERISA regulations permit to decide her second appeal. See 29 C.F.R. § 2560.503-1(i)(1)(i). Mrs. Funkhouser could have chosen to simply file this action after the 120-day period expired, see Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 144 (1985), and there is no indication that she was harmed as a result of the delay. Indeed, the United States Court of Appeals for the Fourth Circuit has "made clear that [it] will not find an abuse of discretion based on ERISA procedural violations absent 'a causal connection between [the procedural defects] and the final denial of a claim.'" Donnell v. Metro. Life Ins. Co., 165 Fed. Appx. 288, 297 (4th Cir. 2006) (quoting Ellis v. Metro. Life Ins. Co., 126 F.3d at 238). Because Mrs. Funkhouser has established no such link between Union's noncompliance with § 2560.503-1 and the denial of her AD&D claim, the court remains convinced that Union's decision was not an abuse of discretion.

---

[4] In the brief filed in support of her motion for summary judgment and at the motions hearing, Mrs. Funkhouser emphasized that the court is familiar with Ms. Barb, due to her misrepresentations in another case that was previously before the court, Miller v. Pilgrim's Pride Corp., Civil Action No. 5:05CV00064. During the course of the proceedings in Miller, Ms. Barb did admit to providing perjured testimony at a deposition. However, Ms. Barb's deposition in Miller took place more than two years after her involvement in the events at issue in this case, and thus, there is no indication that Union had any reason to question Ms. Barb's credibility at the time that it was reviewing Mrs. Funkhouser's claim for AD&D benefits. Moreover, neither Pilgrim's Pride nor its representatives had anything to gain from Union denying Mrs. Funkhouser's claim.

10

As an alternative argument, Mrs. Funkhouser contends that her claim for AD&D benefits should be remanded to Union for the consideration of additional evidence, including statements from Jeremy's co-workers and supervisors. While remand may be appropriate if a court believes that a plan administrator lacked adequate evidence on which to base a decision, Berry v. Ciba-Geigy Corp., 761 F.2d 1003, 1007 (4th Cir. 1985), the Fourth Circuit has repeatedly emphasized that "remand should be used sparingly," Id. at 1008; see also Elliott v. Sara Lee Corp., 190 F.3d at 609. Moreover, as previously explained, an insurer "is under no duty to secure specific forms of evidence," Elliott, 190 F.3d at 609, "especially where the record already contains ample and reliable . . . documentation." Id. Because the administrative record in this case contained adequate documentation for Union to make a rational decision, the court concludes that there is no basis for remand.[5]

## Conclusion

For the reasons stated, the court will deny the plaintiffs' motion for summary judgment and grant Union's motion for summary judgment. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 7th day of March, 2008.

*United States District Judge*

---

[5] The court again notes that Mrs. Funkhouser had the right to supplement the record before Union. If she believed that it was necessary for Union to consider statements from Jeremy's co-workers in order to make a correct decision, she should have submitted such statements during the administrative review process, or at least identified the co-workers who allegedly had knowledge of the events that occurred on July 9, 2004. It is simply not reasonable to believe that Union should have contacted every single employee with whom Jeremy may have spoken regarding the events that occurred on that date. In any event, even assuming that Jeremy told co-workers that he planned to return to work, such evidence would not be dispositive of the issues before the court.

11